DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas in a case involving a claim for attorney fees. Because we conclude that the trial court did not err in granting summary judgment or in assessing sanctions pursuant to Civ.R. 11, we affirm.
 {¶ 2} A history of related events and legal proceedings is relevant to the instant appeal. Appellant, attorney John G. Rust ("Rust") began representing appellee, Molly Harris-Gordon ("Harris-Gordon"), in May 1992 in an uninsured motorist claim stemming from a motor vehicle accident. Rust took the suit on a one-third contingency fee basis.[1] In November 1992, Harris-Gordon discharged Rust and hired attorney Kenneth Mickel. Mickel negotiated with Harris-Gordon's insurer, Castle Insurance Company ("Castle"), and reached a settlement of $18,000, with $5,400 going to Mickel for his services.
 {¶ 3} Harris-Gordon then filed a grievance against Rust with the Toledo Bar Association based upon actions in which Rust simultaneously represented her and another client in a loan transaction. The other client had loaned Harris-Gordon money at very high interest rates. The Supreme Court of Ohio found that Rust had committed three professional misconduct violations: DR 5-105(A) (accepting employment where attorney's independent judgment on client's behalf is likely to be adversely affected, without client's consent after full disclosure), DR 5-105(B) (continuing multiple employment where attorney's independent judgment on any client's behalf is likely to be adversely affected, without client's consent after full disclosure), and DR 9-102(A) (failing to deposit client's funds in identifiable bank account). Rust was publicly reprimanded. See Toledo Bar Assn. v.Rust (1996), 74 Ohio St.3d 635.
 {¶ 4} Five years late, in 1997, Rust filed suit against his former client, Harris-Gordon, and Castle, alleging that Castle had refused to honor his "charging attorney's lien" for part of the settlement. Harris-Gordon was dismissed without prejudice due to lack of service and Castle was granted summary judgment. This court affirmed that ruling, holding that Rust had failed to prove any lien or agreement with his former client's insurer, Castle. See Rust v. Harris-Gordon (Aug. 21, 1998), Lucas App. No. L-97-1415.
 {¶ 5} The next year, 1998, Rust sued Harris-Gordon and Kenneth Mickel, her second attorney, alleging that Mickel had failed to honor his "charging lien" against the proceeds of the settlement. The court denied Harris-Gordon's motion for summary judgment, but granted summary judgment in favor of Mickel, reiterating that no lien or agreement existed which could be enforced against a third party. This court affirmed that decision. See Rust v. Harris-Gordon (June 30, 2000), Lucas App. No. L-99-1287. In August 2000, we also found the appeal to be frivolous and ordered Rust to pay reasonable attorney fees in the amount of $3,844.10 on behalf of Mickel. Rust filed a motion for reconsideration of this award which we denied. The Supreme Court of Ohio declined to hear Rust's appeal of that decision, but denied Mickel's motion for sanctions for frivolous action.
 {¶ 6} After conducting a hearing on Mickel's motion for sanctions, the trial court found that Rust had filed frivolous claims and awarded Mickel $3,190 in attorney fees. Thereafter, Rust filed numerous "motions for reconsideration" and "supplemental" motions, in which he asked that the trial court vacate the award or conduct a oral hearing on his motions. These were all denied.
 {¶ 7} Trial was held on May 13, 2002 regarding Rust's claims against Harris-Gordon for attorney fees. The trial court verbally granted a directed verdict in favor of Rust's former client, Harris-Gordon, and dismissed the case. Two days later, Rust filed a motion to vacate the dismissal pursuant to Civ.R. 54(B) and Civ.R. 60(B) along with a request for oral hearing. On May 29, 2002, the trial court overruled Rust's motion, specifically indicating its reasons for granting the directed verdict and dismissal of Rust's claims. Thereafter, Rust filed three additional motions for "reconsideration" which were denied. The judgment entry for the trial court's May 13, 2002 decision was not journalized until more than one year later, on June 6, 2003. Ultimately, the remaining counterclaims were dismissed and all judgments became final and appealable.
 {¶ 8} Rust now appeals from three judgment entries. The first is the June 7, 2001 judgment granting Civ.R.11 sanctions against Rust and awarding Mickel $3,190 for Rust's willful actions. The second originates from the May 13, 2002 trial in which the trial court granted a directed verdict in favor of Harris-Gordon, but did not file or journalize the judgment entry until June 6, 2003. The third entry is the trial court's denial of Rust's motion for discovery of documents related to the settlement of Harris-Gordon's claims. As set forth by Rust, the following four assignments of error are:
 {¶ 9} "Assignment of Error No I.
 {¶ 10} "The trial court committed prejudicial error when the trial court, Judge Barber, orally on May 13, 2002, which was finally entered in May 29, 2003, granted defendant Gordon's motion for a directed verdict on each of plaintiff's 3 causes of action:
 {¶ 11} "1) the first cause of action for quantum meruit on the $18,000.00 uninsured motorist settlement received by defendant Gordon from Castle Insurance for which defendant Gordon owed plaintiff Rust his fee, based on quantum meruit, "closely approximating $6,000.00;" and
 {¶ 12} "2) on Rust's third cause of action for the contingent fee on $500.00 on the $2,000.00 property damage settlement received by defendant Gordon from a different collision; for Mr. Rust's work which enabled defendant Gordon to recover $2,000.00; and
 {¶ 13} "3) The fourth cause of action for $1,533.75 for 23.45 hours at $75.00 per hour for Rust's work on problems Mrs. Gordon had with her landlord, and other matters involving dollars to be obtained."
 {¶ 14} "Assignment of Error No. II.
 {¶ 15} "Judge McDonald committed prejudicial error on April 10, 2001, by his opinion and judgment entry by which he granted attorney Briley's motion for fees and expenses because Rust allegedly was chargeable with frivolous conduct in bringing his action against attorney Mickel by claiming a "charging lien" on defendant Gordon's signing the contingent fee contract on the uninsured motorist contractual claim against Castle Insurance Co.; and also because plaintiff Rust asserted such was enforceable because it was a partial assignment of a contractual claim on the insurance policy claim; and that Judge McDonald also committed prejudicial error in ordering plaintiff Rust to pay a total of $3,190.00 by his opinion and judgment entry of June 7, 2001; and by his multiple denials of motions for rehearing of said judgment entries of June 18, 2001, and June 3, 2002.
 {¶ 16} "Assignment of Error No. III.
 {¶ 17} "Judge McDonald committed prejudicial and reversible error in denying on April 29, 2000, discovery as to defendant Gordon and Mickel; and in granting on March 4, 2003, the motion to quash of Eastman and Smith as to all non-privileged records, and all communications between attorneys Kane and Mickel.
 {¶ 18} "Assignment of Error No. IV.
 {¶ 19} "This court of appeals should now follow the holding of the Ohio Supreme Court in case #00-1483, which held on the same basis issue that plaintiff Rust in bringing an appeal of this case to the Ohio Supreme Court was not "frivolous."
 I. {¶ 20} In the first assignment of error, Rust argues that the trial court erred in granting a directed verdict in favor of Harris-Gordon. We disagree.
 {¶ 21} In ruling upon a defendant's motion for a directed verdict, the trial court must treat as true all the evidence, together with any inferences which may be drawn in favor of the plaintiff. Wilson v. Peoples Ry. Co. (1939), 135 Ohio St. 547,551. If reasonable minds might "reach different conclusions as to any question of fact essential to the claim of the party against whom the motion is made, the motion should be denied and the case submitted to the jury." Id., at 552.
 {¶ 22} When an attorney who is representing a client on a contingency basis is discharged, the attorney may claim fees only on the basis of quantum meruit. Reid, Johnson, Downes, Andrachik Webster v. Lansberry (1994), 68 Ohio St.3d 570, 573. The doctrine of quantum meruit is an equitable remedy giving "rise to obligations imposed by law, irrespective of the intentions of the parties, in order to prevent an injustice when one party retains a benefit from another's labors." Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 800.
 {¶ 23} When determining the reasonable value of a discharged attorney's services, the trial court should consider the totality of the circumstances surrounding the situation. Reid, supra, at paragraph three of the syllabus. While the number of hours worked by the attorney before the discharge may be one factor considered, the court should also consider "the recovery sought, the skill demanded, the results obtained, and the attorney-client agreement itself." Id.
 {¶ 24} DR 2-106(B) also provides guidance in determining the reasonableness of fees, including the following:
 {¶ 25} "(1) The time and labor required, the novelty and difficulty of the questions.
 {¶ 26} "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 {¶ 27} "(3) The fee customarily charged in the locality for similar legal services.
 {¶ 28} "(4) The amount involved and the results obtained.
 {¶ 29} "(5) The time limitations imposed by the client or by the circumstances.
 {¶ 30} "(6) The nature and length of the professional relationship with the client.
 {¶ 31} "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 {¶ 32} "(8) Whether the fee is fixed or contingent."
 {¶ 33} Any request for a quantum meruit recovery necessarily invokes the equitable jurisdiction of the court. Sonkin MelenaCo., L.P.A. v. Zaransky (1992), 83 Ohio App.3d 169, 175. Consequently, a court's decision regarding the award of attorney fees on a quantum meruit basis is based upon the individual case facts and will be reversed only if there is an abuse of discretion. Reid, supra, at 577; Goldauskas v. Elyria FoundryCo. (2001), 145 Ohio App.3d 490, 496. An abuse of discretion is more than just an error of judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 34} In this case, Rust submitted an itemized list with hours allegedly spent on Harris-Gordon's case. Rust also claimed that he handled other matters for Harris-Gordon, including matters allegedly relating to her landlord, suspect loan transactions, and another claimed motor vehicle damage incident. Rust asserted that he spent a number of hours as her attorney, but presented no evidence of any benefit to Harris-Gordon from his representation. Although Rust claimed that he had sent a demand letter to Castle, the client's insurance company, he could not produce such a letter. He also claimed that he had sent Harris-Gordon to a doctor to obtain a letter for use in establishing her claim. Again, Rust presented nothing to show that, even if it were obtained, that such a letter was instrumental in obtaining the settlement. Rust conducted no dispositions or performed any actual investigations.
 {¶ 35} Contrary to Rust's claims that Harris-Gordon reaped the benefits of his labor, he failed to show any action whatsoever which aided in the eventual receipt of her settlement funds. Moreover, Rust's representation resulted in her liability on loans with exorbitant interest rates, a benefit to one of Rust's other clients. To the contrary, Harris-Gordon's suit was disrupted when, realizing that he was not handling her affairs in an appropriate way, she had to discharge him. Rust's unethical actions resulted in Harris-Gordon's having to file a grievance against him with the bar association and her having to find a new attorney.
 {¶ 36} Most crucial to his case, however, is Rust's inability to establish an exact amount that he believed was reasonable. During his case-in-chief, the court asked him to value the total amount of his claim. He responded, "I don't know." He said he was unable to provide a value claiming that he needed more information from Mickel or the insurance company with respect to how much Harris-Gordon received. Rust continued to insist that he was owed at least $6,000, an amount equal to one-third of Harris-Gordon's settlement. Instead of presenting a true claim for quantum meruit, Rust simply expected to enforce his original agreement.
 {¶ 37} After reviewing the entire record, we agree with the trial court that Rust failed to both establish the amount he claimed or to show that Harris-Gordon realized any significant benefit from his representation. Therefore, we cannot say that the trial court erred in granting a directed verdict in favor of Harris-Gordon on Rust's claims for attorney fees.
 {¶ 38} Accordingly, Harris-Gordon's first assignment of error is found not well-taken.
 II. {¶ 39} We will address Rust's second and fourth assignments of error together. In essence, Rust argues that the trial court should not have granted sanctions against him or awarded attorney fees to Mickel, since his actions were not willful because they were filed in "good faith."
 {¶ 40} Before a trial court imposes sanctions pursuant to Civ.R. 11, it must consider whether the attorney who signed the pleading, motion or other document: (1) read it; (2) to the best of his or her knowledge, harbored good grounds to support it; and (3) did not file the pleading, motion or other document for purposes of delay. Ceol v. Zion Indus., Inc. (1992),81 Ohio App.3d 286, 290. If any of the aforementioned requirements is violated, the trial court must then determine if the violation was "willful" as opposed to merely negligent. Id. Finally, if the violation was willful, the trial court may impose an "appropriate sanction" on the offending party, which may include an award to the opposing party of its expenses and reasonable attorney fees incurred in bringing the Civ.R. 11 motion. Id.; Civ.R. 11. A trial court has broad discretion in determining what sanction, if any, is to be imposed for violating the rule. Ceol, supra.
 {¶ 41} In this case, Rust filed an action for fees owed by Gordon-Harris against Mickel, the second attorney, based upon his "charging lien" theory. Rust contends that he had a "good faith" belief that he had an actionable claim and should not be sanctioned. The trial court and this court, however, had already established that no such lien existed, meaning that no third party could be held responsible for any agreement between Rust and Gordon-Harris. See Rust v. Harris-Gordon (Aug. 21, 1998), Lucas App. No. L-97-1415. Despite these rulings, however, Rust sought to enforce payment from Mickel by adding him to the lawsuit against his former client. In addition, in the face of the trial court's consistent denials, Rust continued to file motions for reconsideration and motions for discovery, based upon what he insisted was his right to collect contingent fees. Each pleading caused Mickel to spend additional time and money on Rust's unsupported claims.
 {¶ 42} Rust also contends that because the Supreme Court of Ohio denied Mickel's motion for sanctions, the trial court should not have granted sanctions. The Supreme Court's ruling, however, has no bearing on any later rulings by the trial court, since the basis for the sanctions were Rust's actions and filings prior to his appeal to the Supreme Court which declined to even review the case. In addition, the standard for Civ.R. 11 sanctions is different than the standard employed by the Supreme Court of Ohio. Thus, Rust's contention is wholly without merit.
 {¶ 43} As a licensed attorney, Rust is presumed to have knowledge of the law and to be able to understand its application to factual situations. Despite being informed that his claim against Mickel was not viable, he continued to pursue it. In our view, whether through ignorance or petulance, Rust's actions constitute a willful filing of a claim without legal authority to support it.
 {¶ 44} Rust also argues that the trial court erred in denying his "motions for rehearing" pursuant to Civ.R. 60(B). To succeed on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."GTE Automatic Elec., Inc. v. ARC Industries, Inc. (1976),47 Ohio St.2d 146, paragraph two of the syllabus. A Civ.R. 60(B) motion for relief from judgment is not a substitute for appeal.Key v. Mitchell (1998), 81 Ohio St.3d 89, 90-91; Blasco v.Mislik (1981), 69 Ohio St.2d 684, 686.
 {¶ 45} The grant or denial of a motion for relief from judgment under Civ.R. 60(B) lies in the trial court's sound discretion. See Griffey v. Rajan (1987), 33 Ohio St.3d 75. As noted previously, an abuse of discretion indicates that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, supra.
 {¶ 46} In this case, Rust failed to establish any of the grounds required under Civ.R. (60)(B) in support of his motion. Rust, in fact, often utilizes Civ.R. 60(B) to simply rehash the initial arguments. He filed at least 10 such "motions for reconsideration" over the course of this 7 year-old case, often filing "supplemental motions" and "renewed motions." In each, Rust simply repeated identical arguments. Like an insistent child nagging its parents, Rust seems to believe that if he keeps filing motions, one court or another will eventually give in and change its rulings. At some point, these never-ending unfounded filings must cease. Therefore, we cannot say that the trial court abused its discretion in granting Civ.R. 11 sanctions against Rust and ordering him to pay Mickel's attorney fees.
 {¶ 47} Accordingly, Rust's second and fourth assignments of error are found not well-taken.
 III. {¶ 48} Rust, in his third assignment of error, claims that the trial court erred in denying his motion for discovery of attorney and insurance records regarding settlement payments made to Harris-Gordon.
 {¶ 49} "In discovery practices, the trial court has a discretionary power not a ministerial duty." State ex rel.Daggett v. Gessaman (1973), 34 Ohio St.2d 55, 57. Thus, the standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion. Mauzy v.Kelly Servs. (1996), 75 Ohio St.3d 578, 592, citing to Heat Control, Inc. v. Hester Industries, Inc. (C.A. Fed. 1986),785 F.2d 1017, 1022.
 {¶ 50} Although such discretion is not without limits, an appellate court will reverse a discovery order only "when the trial court has erroneously denied or limited discovery."Mauzy, supra, citing to 8 Wright, Miller Marcus, Federal Practice Procedure (2 Ed. 1994) 92, Section 2006. Thus, the trial court's decision that extinguishes a party's right to discovery will be reversed only if the trial court's decision is "improvident and affects the discovering party's substantial rights." Mauzy, supra, citing to Rossman v. Rossman (1975),47 Ohio App.2d 103, 110.
 {¶ 51} Rust's discovery request related to information regarding Harris-Gordon's settlement amounts. Since his claim for fees could be recovered only on the basis of quantum meruit, he had no need for such information. The value of his services should have been established independently by his own records and on the basis of what benefit he provided to Harris-Gordon. Since Rust failed to establish that he played any significant part in the settlement of her claim, any information regarding her subsequent attorney's representation was irrelevant to the value of his own services. Therefore, we cannot say that the trial court abused its discretion in denying Rust's discovery request for attorney records.
 {¶ 52} Accordingly, Rust's third assignment of error is found not well-taken.
 IV. {¶ 53} Appellee, Kenneth Mickel, filed a motion for sanctions and an award of attorney fees with this court, arguing that the appeal against him is "totally frivolous" since there are no grounds to support it.
 {¶ 54} App.R. 23 provides that "if a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." A frivolous appeal is one that presents no reasonable question for review. Talbott v. Fountas (1984),16 Ohio App.3d 226. Sanctions under App.R. 23 serve two important functions: compensation for the non-appealing party for the defense of spurious appeals, and deterrence of frivolity to preserve the appellate calendar for cases truly worthy of consideration. Tessler v. Ayer (1995), 108 Ohio App.3d 47, 58.
 {¶ 55} Upon careful consideration of the record in this case, we find that this appeal as to appellee Mickel is frivolous, since the underlying basis for the trial court's sanctions was one well-known to Rust. The subject matter of his claims have involved ongoing litigation since 1997. After reviewing the complete record, including the many motions for "reconsideration" and the rhetoric that Rust utilized to extend and prolong the life of this case's litigation, we agree that the second, third, and fourth assignments of error, all which pertain to attorney Mickel, present no reasonable question for review. We have already granted sanctions against appellant for similar actions once before in a related case. See Rust v. Harris-Gordon (June 30, 2000), Lucas App. No. L-99-1287. Rust files materials based solely on what he wishes the law were, rather than on what the law is. There can be no good faith extensions of legal principles when courts have repeatedly ruled against him on identical issues. Since Rust refuses to acknowledge his frivolous claims or pleadings, it is our duty to repair the damage that flows from his cavalier treatment of legal proceedings.
 {¶ 56} Therefore, pursuant to App.R. 23, we find the instant appeal against Mickel frivolous and find Mickel's motion for sanctions well-taken and granted. Appellant is ordered to pay the reasonable expenses of appellee, including attorney fees and costs. Appellee may submit evidence by way of affidavit regarding the costs, including attorney fees, incurred in this appeal, within seven days of the judgment entry herein. Appellant may submit counter affidavits concerning the amount of reasonable attorney fees and costs within 14 days after judgment is entered herein. This court will then determine the amount to be assessed against appellant.
 {¶ 57} The decision of the Lucas County Court of Common Pleas is affirmed in all respects. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Handwork, P.J. Knepper, J. Lanzinger, J. concur.
[1] As we noted in a prior appeal relating to these events, while Rust refers to the contingency agreement, it is missing from the record. The agreement is not dispositive of this appeal, however.