[Cite as *In re Estate of Leichman*, 2016-Ohio-4592.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF: :
                                                          CASE NOS.  CA2015-07-060
    ESTATE OF JOYCE LEICHMAN            :                      CA2015-07-062

                                                     :          O P I N I O N
                                                                    6/27/2016
                                                     :

                                                     :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2012EST1436

Georgianna Parisi, 257 Regency Ridge Drive, Dayton, Ohio 45459, appellant, pro se

Tyrone P. Borger, 24 Remick Boulevard, Springboro, Ohio 45066, for appellee

**S. POWELL, J.**

{¶ 1}   Petitioner-appellant, Georgianna I. Parisi, the former attorney for the estates of Joyce and Richard Leichman, appeals from the decision of the Warren County Court of Common Pleas, Probate Division, denying her application for attorney fees.  For the reasons outlined below, we affirm.

{¶ 2}   Respondent-appellee, Lori Horstman, retained Parisi to represent the estates of her parents, Joyce and Richard Leichman, who passed away on November 13, 2010 and January 27, 2011, respectively.  The sole asset of each estate was 308 shares of J.C.

Penney stock that had a value of $9,588.04. Parisi, however, never completed the administration of the Leichman estates and subsequently withdrew as counsel after she placed her law license on inactive status effective September 1, 2013. Horstman later retained substitute counsel who completed the administration of both estates for a flat fee of $500.

{¶ 3} On December 3, 2013, several months after withdrawing as counsel, Parisi filed an application for attorney fees requesting an additional $2,550.76 from Horstman for work she claims to have done on the Leichman estates. However, the administration of the Leichman estates was later closed without any ruling on Parisi's application and without any additional attorney fees being paid to Parisi. As a result, on September 19, 2014, Parisi filed a motion to reopen the Leichman estates and requested a hearing on her application for attorney fees. As Parisi stated in her motion, "[s]ince it is apparent that [Horstman] has repudiated the original agreement, Ms. Parisi respectfully requests the Court to hold a full hearing on the attorney fees originally requested." Because Horstman denied that the Leichman estates owed any additional money to Parisi, the trial court scheduled a contested hearing on that single issue for October 27, 2014. At Parisi's request, the contested hearing was then continued several times before ultimately taking place on April 16, 2015.

{¶ 4} On April 8, 2015, eight days before the contested hearing was scheduled to begin, Parisi filed a notice with the trial court claiming she had previously submitted discovery requests to Horstman on February 24, 2015 that included various interrogatories, requests for certain documents, and requests for admissions. Parisi did not attach a copy of her alleged discovery requests to this filing. Nevertheless, as part of later filings with the trial court, Parisi claims her discovery requests included a request that Horstman admit the Leichman estates owed her an additional "$808.59 for her legal services provided to the Estate of Richard Leichman and $1,742.17 for her legal services to the Estate of Joyce

Leichman." It is undisputed that Horstman never responded to Parisi's alleged discovery requests.

{¶ 5} On April 16, 2015, the trial court held the previously scheduled hearing on Parisi's application for attorney fees. The record on appeal contains only a partial transcript of this hearing. However, the record indicates the trial court heard testimony from both Parisi and Horstman at this hearing, as well as from Parisi's expert witness, Konrad Kuczak, an attorney who has been licensed to practice law in Ohio since 1969. During this hearing, Kuczak specifically testified that he reviewed "the requests for admissions that are admitted as a matter of law that you alluded to in your, uh, opening statement." It does not appear that the alleged admissions were ever admitted as an exhibit at the contested hearing. Rather, on May 15, 2015, one month after the contested hearing had concluded, Parisi filed a "Notice of Admissions Deemed Admitted." Attached to this notice, Parisi included an "Exhibit A" that consisted of a one-page document listing Parisi's purported requests for admissions. The document does not contain a certificate of service.

{¶ 6} On June 2, 2015, the probate court issued its decision denying Parisi's application for attorney fees. As part of that decision, the trial court provided the following findings of fact:

1. [Horstman] retained [Parisi] to represent the estates of her parents, Richard Leichman and Joyce Leichman.

2. The sole asset in each estate was 308 shares of J.C. Penney stock, with a date of death value of $9,588.04.

3. [Horstman] paid [Parisi] the sum of $500.00 as a retainer.

4. [Parisi] advised [Horstman] that the estates could not be released from administration because the decedents' wills named [Horstman] and one of her siblings co-executors.

5. Upon the filing of each estate and application to probate will, the co-executor, the brother of [Horstman], executed a declination, thereby naming [Horstman] as the sole executor.

- 3 -

6.    In addition to the retainer, [Horstman] paid [Parisi] additional monies for postage and other expenses; however, there was no testimony as to the amount of such payments.

7.    On one occasion, while [Horstman] was attending her daughter's Saturday morning ball game, [Parisi] telephoned [Horstman] demanding money and that [Horstman] must bring it to her office by Noon that day. [Horstman] left her daughter's game and went to [Parisi's] office and paid the money. There was no testimony as to the amount paid by [Horstman].

8.    The Inventory filed in each estate by [Parisi] named the aforementioned J.C. Penney stock, and its date of death value, as the only asset of the estate.

9.    The decedents had amassed credit card debt as a way of paying medical and other expenses. [Parisi] advised [Horstman] to correspond directly with the credit card companies to resolve the debt. On the back of an envelope, [Parisi] hand-drafted a form letter for [Horstman] to use. [Horstman] prepared and sent the letters, and was able to resolve the credit card debt without further assistance of [Parisi].[1]

10. As to the transfer of J.C. Penney stock, [Parisi] advised [Horstman] to sell the stock and have the cashier's check made payable to [Parisi]; she would then pay the rest of her costs and expenses and issue a check to [Horstman] for the remainder. At this time, [Horstman] became suspicious of [Parisi's] intentions. It was subsequent to this that [Horstman] terminated [Parisi's] services.

11. [Horstman] testified at trial, when examining the bill statements offered by [Parisi] in her case, that the billing statements offered as exhibits looked different than the billing statements actually received by [Horstman] from [Parisi]. [Parisi] denied this in her testimony.

12. [Horstman] testified that one entry on the billing statement was for a telephone call from [Parisi] to the husband of [Horstman]. [Horstman], as well as her husband, testified that the purpose of the phone call was [Parisi] requesting from [Horstman's] husband free tickets to a sporting or other type of entertainment event.

---

1. We note that the trial court's decision actually states that "[o]n the back of an envelope, [Parisi] hand-drafted a form letter for [Parisi] to use. [Parisi] prepared and sent the letters, and was able to resolve the credit card debt without further assistance of [Parisi]." This is illogical and clearly represents clerical error on behalf of the trial court.

13. [Parisi] applied to have her law license placed on inactive status, and the application was granted effective September 1, 2013. On September 12, 2013, she withdrew as counsel for the aforementioned estates.

14. On or about December 2, 2013, [Horstman] retained substitute counsel, who completed both estates for a fee of $500.00.

15. On December 3, 2013, [Parisi] submitted to this Court her fee agreement, as well as a request for additional attorney fees. As to the Estate of Joyce Leichman, she requested the sum of $1,742.17; as to the Estate of Richard Leichman the sum of $808.59.[2]

16. [Horstman] refused to pay any additional attorney fees to [Parisi].

**{¶ 7}** After listing these factual findings, the trial court determined that the Leichman estates have "more than fulfilled any financial obligation" they had with Parisi. In so holding, the trial court noted that it "had the benefit of testimony and exhibits" presented at the hearing and pursuant to its local rules:

> [Parisi], had she completed the work, would be entitled to a total of $958.80. [Horstman] paid a retainer of $500.00, which would result in a balance due of $458.80. This money would be due and owing [Parisi] had she completed her work for [Horstman], pursuant to her fee agreement. But she did not do so.

The trial court also noted that there was nothing in the record to indicate Parisi's alleged discovery requests were ever actually served upon Horstman. Yet, even if those discovery requests were properly served, the trial court determined that Parisi's discovery requests, particularly that of her requests for admissions, "goes to the sole issue, the very core, of this case," the use of which was "inappropriate and served no useful purpose other than to harass and annoy [Horstman]" since that exact issue had already been scheduled for a

---

2. The fee agreement referenced by the trial court is the agreement Parisi and Horstman entered into for the administration of the Leichman estates. The agreement sets forth Parisi's hourly rate, as well an agreement that Parisi would be reimbursed for any costs and expenses incurred.

contested hearing so that it could be resolved on the merits.

{¶ 8} Parisi now appeals the trial court's decision, raising three assignments of error for review.

Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN THAT ITS ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN THAT THE PETITIONER-APPELLANT ASKED FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND THE COURT NEVER MENTIONED THE EXPERT WITNESS TESTIMONY PRESENTED.

{¶ 10} In her first assignment of error, Parisi argues the trial court's decision to deny her application for attorney fees was against the manifest weight of the evidence since the trial court "never once mentions" the testimony of her expert witness, Konrad Kuczak, within its decision. According to Parisi, "[t]he failure of the Court to even note the testimony of [her expert] in its findings or facts or in the conclusions of law is a plain error under the law." We disagree.

{¶ 11} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the "judgment is supported by some competent, credible evidence going to all essential elements of the case." *Ashburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070,

2007-Ohio-2995, ¶ 26, citing *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 12} Although an expert's opinion may not be "'arbitrarily ignored'" unless there are "'some reasons * * * objectively present,'" *Coleman v. Hamilton*, 12th Dist. Butler Nos. CA2011-03-049 thru CA2011-03-051, 2011-Ohio-4717, ¶ 14, quoting *State v. Brown*, 5 Ohio St.3d 133, 135 (1983), it is well-established that an expert's opinion is not conclusive upon a trier of fact and serves only as "an item of evidence intended to assist the trier of fact in consideration with the other evidence of the case." *Croft v. State Farm Mut. Auto. Ins. Co.*, 3d Dist. Allen No. 1-01-72, 2002 WL 18665, *3 (Jan. 8, 2002). As a result, it is within "the trial court's prerogative to give [an] expert's testimony whatever weight it deemed appropriate." *Donithan v. Donithan*, 12th Dist. Clermont No. CA89-12-104, 1990 WL 134310, *2 (Sept. 17, 1990). This is true even when that expert opinion goes unrebutted. *Butler v. Stevens*, 2d Dist. Montgomery No. 22822, 2009-Ohio-2775, ¶ 39, citing *Hotel Statler v. Cuyahoga Cty. Bd. of Revision*, 79 Ohio St.3d 299, 304 (1997).

{¶ 13} After a thorough review of the record, we fail to see how the trial court's failure to directly comment on the expert witness testimony within its decision constitutes plain error or renders that decision against the manifest weight of the evidence. As noted above, the trial court specifically stated within its decision that it "had the benefit of testimony and exhibits" presented at the hearing. This includes the testimony from Parisi's expert witness. The trial court was not required to give credit to this testimony, and its decision clearly demonstrates that it did not. "[T]he trier of fact is not required to accept as gospel every aspect of the expert's testimony; the trier of fact may believe all of what a witness says, none of it, or part of it." *Tolliver v. Tolliver*, 12th Dist. Clinton No. CA90-07-015, 1991 WL 6364, *2 (Jan. 22, 1991).

{¶ 14} Rather, after considering all the testimony and evidence presented, the trial

court found the Leichman estates have "more than fulfilled any financial obligation" they had with Parisi. Aside from the testimony of her expert witness, Parisi did not provide this court with a full transcript of the contested hearing on her application for attorney fees. "Absent a full trial transcript, this court must presume the validity of the trial court's determinations[.]" *Bunnell Elec. Inc. v. Ameriwash*, 12th Dist. Warren No. CA2004-01-009, 2005-Ohio-2502, ¶ 9. Therefore, because we can find no error in the trial court's decision, Parisi's first assignment of error is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED WHEN IT DID NOT ENFORCE THE OHIO RULES OF CIVIL PROCEDURE REGARDING ADMITTED ADMISSIONS.

{¶ 17} In her second assignment of error, Parisi argues the trial court erred by not giving credit to her requests for admissions after those requests went unanswered.[3] We disagree.

{¶ 18} Civ.R. 36 governs requests for admissions. Specifically, pursuant to Civ.R. 36(A)(1), "[t]he matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." As this court has stated previously, "[w]hen a party fails to timely respond to a request for admissions, the admissions become facts of record, which the court must recognize." *January Invests., LLC v. Ingram*, 12th Dist. Warren No. CA2009-09-127,

---

3. It should be noted, due to only a partial transcript of the contested hearing being submitted in this matter, this court is unable to determine the full extent that the request for admissions was discussed at the hearing on Parisi's application for attorney fees. However, as noted above, the record indicates that Kuczak testified Parisi had "alluded" to the request within her opening statement. Both Parisi and Horstman also referenced the requests for admissions within their written closing arguments.

2010-Ohio-1937, ¶ 17.  However, this court has also determined that "[a] trial court may permit the withdrawal or amendment even if the admission is the result of a party's untimely failure to respond." *Baron v. Buckner*, 12th Dist. Warren No. CA90-10-071, 1991 WL 69355, *2 (Apr. 29, 1991).  This is because Civ.R. 36 "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67 (1985).

{¶ 19} We recently addressed this same issue in *Fifth Third Bank v. Meadow Park Plaza, L.L.C.*, 12th Dist. Clinton No. CA2015-07-012, 2016-Ohio-753.  In that case, the trial court issued a decision granting Fifth Third partial summary judgment, finding Meadow Park had defaulted on its obligations under a note, guaranty agreement, and mortgage held by Fifth Third.  The trial court then granted Meadow Park additional time for discovery "regarding the issue of amounts owed to Fifth Third under the terms of the note, mortgage and guaranty." *Id.* at ¶ 6.  The trial court set the matter for a hearing as to whether there was, in fact, any indebtedness still due and owing to Fifth Third on the note and guaranty agreement.  *Id.* at ¶ 6, 28.  The amount of the disputed debt, if any, was the only issue set for this contested hearing.

{¶ 20} Shortly before the hearing began, Meadow Park filed a notice of admission deemed admitted, indicating it had sent a discovery request to Fifth Third that had since gone unanswered. *Id.* at ¶ 7.  Included within the discovery request were various interrogatories, a request for production of documents, and a single request for an admission, specifically asking Fifth Third to "[a]dmit that, once the proceeds of the receiver's sale is applied, [Meadow Park] owe[s] [Fifth Third] nothing." *Id.*  Although acknowledging that it had not answered Meadow Park's discovery request, Fifth Third filed a memorandum in opposition to Meadow Park's notice, wherein it argued Meadow Park's attempt to submit a request for

admissions to undo the trial court's finding was "disingenuous at best." *Id.* The trial court subsequently issued a decision, wherein it determined that based on the compelling circumstances of the case, the principles outlined in Civ.R. 1(B), as well as its desire to establish an accurate deficiency judgment, Meadow Park's reliance on the unanswered request for admission in an effort to avoid a deficiency judgment was "full of gamesmanship and without merit." *Id.* at ¶ 10. Meadow Park then appealed.

{¶ 21} On appeal, Meadow Park argued the trial court erred and abused its discretion by not giving credit to its request for admission after the admission went unanswered. *Id.* at ¶ 26. This court, however, found the trial court did not err or abuse its discretion in that regard since Meadow Park's request "dealt with the very issue upon which the trial court had already determined an evidentiary hearing was required; namely, whether there was, in fact, any indebtedness still due and owing to Fifth Third on the note and guaranty agreement." *Id.* at ¶ 28. This court also agreed with the trial court's decision finding Meadow Park's "attempts to avoid a deficiency judgment through this procedural device was 'full of gamesmanship and without merit.'" *Id.* at ¶ 29.

{¶ 22} As can be seen, in both *Fifth Third* and the case at bar, the trial court scheduled a contested hearing to resolve an issue regarding a disputed debt. Thereafter, one party sought further discovery that included a request for an admission regarding the amount due on that disputed debt, the single issue scheduled to be heard at the contested hearing. The amount due on that debt, if any, was clearly an issue of contention as there would have been no need for the trial court to ever hold a contested hearing on the matter were that not the case. That is certainly true here, for Parisi herself even stated within her motion to reopen the administration of the Leichman estates that a contested hearing was necessary "to determine her attorney fees" now that Horstman had refused to provide her with any additional money.

{¶ 23} Our decision in *Fifth Third* is directly analogous to the facts at issue here. Similar to the request for admission at issue in *Fifth Third*, the request for admission at issue in this case asked Horstman to admit the Leichman estates owed Parisi an additional "$808.59 for her legal services provided to the Estate of Richard Leichman and $1,742.17 for her legal services to the Estate of Joyce Leichman." In turn, just as in *Fifth Third*, and just like the trial court found in this case, Parisi's request "goes to the sole issue, the very core, of this case," an issue the trial court had already scheduled for a contested hearing several months before Parisi alleges she ever submitted her discovery requests to Horstman.

{¶ 24} Like Meadow Park's efforts in *Fifth Third*, Parisi did not seek to rely upon the unanswered admission in preparation of trial. Rather, Parisi sought to rely on the admission in order to circumvent a contested hearing on the only issue in dispute; namely, the amount of additional attorney fees Parisi was owed, if any. While Parisi claims otherwise, we agree with the trial court's decision finding Parisi's attempts to manipulate the discovery rules in order to rely on a procedural technicality when she clearly knew Horstman had repeatedly and consistently refused to provide her with any additional money even after a contested hearing on that single issue had already been scheduled was "inappropriate and served no useful purpose other than to harass and annoy [Horstman]." The purpose behind Civ.R. 36 is to allow the parties to quickly and efficiently reach a resolution based on the actual facts and merits of the case. Parisi used the rule as a way to avoid such a resolution. We did not approve of such tactics in *Fifth Third*, nor do we approve of those same tactics here.

{¶ 25} In so holding, we note that it is generally well-established that "'[a] request for admission can be used to establish a fact, even if it goes to the heart of the case.'" *Kornylak Corp. v. Messina*, 12th Dist. Butler No. CA99-03-052, 1999 WL 760893, *2 (Sept. 27, 1999), quoting *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67 (1985). However, just as this court previously concluded in *Fifth Third*, strict application of this rule to factual scenarios

where the exact issue raised within a request for admission had already been scheduled for a contested hearing on that single issue would be fundamentally unfair to the administration of justice and do nothing more than lead to further attempts to exploit the Rules of Civil Procedure.[4] That is certainly the case here for we can find nothing in the record before this court to conclusively prove Horstman ever actually received Parisi's alleged discovery requests, nor do we have the benefit of reviewing the full transcript of the contested hearing to determine the full extent that the parties may have discussed those discovery requests.

{¶ 26} We understand the concerns that may be raised by our decision in the case at bar and that of our previous decision in *Fifth Third*. However, this decision should not be construed as limiting a party's ability to seek discovery after a contested hearing has been scheduled, nor should it be interpreted as this court rewriting the Rules of Civil Procedure. Rather, our decision in this case and that of *Fifth Third* merely stand for the general proposition that, when possible, disputes should be resolved on their merits, not through deception and gamesmanship. Other states have reached similar results. *See, e.g., Costello v. Zavodnik*, Ind.App. No. 49A04-1504-PL-163, 2016 WL 2956569, *5 (May 23, 2016) (requests for admissions asking responding party to admit liability of $30,000, $300,000, and $600,000 in a contested dispute over the sale of a $75 printer were improper and constituted a misuse of the discovery rules in hopes that "[responding party] would not respond, rendering the matters admitted by operation of Rule 36"); *see also St. Mary v. Superior Court*, 223 Cal.App. 4th 762, 783 (2014) (requests for admissions are intended to "expedite trials and to eliminate the need for proof when matters are not legitimately contested" as opposed to serve as "a 'gotcha' device"); *Lucas v. Clark*, 347 S.W.3d 800, 803

---

4. For example, a request for admission that still goes to the ultimate issue could be Parisi asking Horstman to admit that she did not pay a $500 retainer fee, or vice versa Horstman asking Parisi to admit that she did pay a $500 retainer fee. These types of admissions go to the ultimate issue – the amount due on a disputed debt, if any – while still allowing the parties to litigate the case on its merits.

(Tex.Ct.App.2011) (requests for admissions are not intended to serve "as a trap to prevent the presentation of the truth in a full hearing but as a tool for the fair disposition of litigation with a minimum of delay"). This fully comports with Civ.R. 1(B), which specifically states that "[t]hese rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Therefore, finding no error in the trial court's decision, Parisi's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED WHEN IT IGNORED THE EVIDENCE SUBMITTED AND FAILED TO TAKE INTO CONSIDERATION THE QUANTUM MERIET [sic] AMOUNT OF WORK PERFORMED BY THE PETITIONER-APPELLANT IN THE TWO ESTATES.

{¶ 29} In her third assignment of error, Parisi presents several arguments alleging the trial court erred (1) by making a factual finding that Horstman paid her a $500 retainer fee when there was no documentary evidence to corroborate her testimony, (2) by striking the exhibits she attached to her written closing argument, and (3) by "refusing to award [her with] ANY attorney fees" under a theory of quantum meruit since she "performed necessary and valuable legal services for the two estates." We disagree.

{¶ 30} Initially, as it relates to the trial court's factual finding that Horstman had paid Parisi a $500 retainer fee, it is well-established that the trial court, as the trier of fact, is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2007-02-022, 2008-Ohio-1358, ¶ 19. In turn, although Parisi denied that Horstman had ever paid her a $500 retainer fee, the trial court weighed the credibility of Horstman's testimony and found that

Horstman actually had paid the $500 retainer fee. "[A] finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984). Therefore, Parisi's first argument is without merit.

{¶ 31} Next, as it relates to the trial court's decision to strike the exhibits Parisi attached to her written closing argument, just like the trial court found, it was improper for Parisi to present any new evidence as part of her written closing argument since closing arguments are not evidence. *Di v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 101760, 2016-Ohio-686, ¶ 109 ("opening and closing statements are not evidence"); *Jenkins v. Hill*, 4th Dist. Meigs No. 14CA4, 2015-Ohio-118, ¶ 12 ("statements made by counsel during opening statements and closing arguments are not evidence"). Rather, "[t]he purpose of closing argument is to summarize the evidence at trial." *John F. Bushelman Const. v. Glacid Group, Inc.*, 1st Dist. Hamilton Nos. C-950412 and C-950438, 1996 WL 348002, *3 (June 26, 1996). Therefore, Parisi's second argument is without merit.

{¶ 32} Finally, as it relates to Parisi's claim that she was entitled to recover any additional attorney fees on a theory of quantum meruit, Parisi had the burden to prove "the billed time was fair, proper and reasonable." *In re Dye*, 12th Dist. Fayette Nos. CA2011-04-004 thru CA2011-04-006, 2012-Ohio-2570, ¶ 44, citing *In re Estate of Williams*, 11th Dist. Lake No. 2003-L-200, 2004-Ohio-3993, ¶ 21. As noted above, the trial court found the fees that had already been paid to Parisi "more than fulfilled any financial obligation" for the work Parisi actually did. "[A] court's decision regarding the award of attorney fees on a quantum meruit basis is based upon the individual case facts and will be reversed only if there is an abuse of discretion." *Rust v. Harris Gordon*, 6th Dist. Lucas No. L-03-1091, 2004-Ohio-1636, ¶ 33. Again, because Parisi did not provide this court with a full transcript of the contested hearing, we must presume the validity of the trial court's decision. Therefore, Parisi's third

argument is without merit. Accordingly, having found no merit to any of the arguments raised herein, Parisi's third assignment of error is overruled.

**{¶ 33}** Judgment affirmed.

HENDRICKSON, J., concurs.

PIPER, P.J., concurs separately.

**PIPER, J., concurring separately.**

**{¶ 34}** Due to the analysis, not the result, I must concur in judgment only.

**{¶ 35}** The second assignment of error should have been resolved in the same manner as the first assignment of error.[5] In resolving the first assignment of error regarding the trial court's failure to mention in any way Parisi's expert witness testimony in its decision, the majority states: "[A]side from the testimony of her expert witness, Parisi did not provide this court with a full transcript of the contested hearing on her application for attorney fees. 'Absent a full transcript, this court must presume the validity of the trial court's determination[.]' *Bunnell Electric, Inc. v. Ameriwash*, 12th Dist. Warren No. CA2004-01-009, 2005-Ohio-2502."

### No Exhibit, No Record, No Service

**{¶ 36}** Although Parisi indicated she previously submitted requests for admission to Horstman, such requests were never tendered as an exhibit and therefore are not available for appellate review. The trial court apparently examined whatever Parisi allegedly submitted to Horstman and noted there was no indication of service. Without a certificate of service, the trial court could not determine if the requests were submitted timely or "ever actually

---

5. In the first assignment of error, an incomplete record rendered us incapable of reviewing whether or not reasons were objectively present for ignoring the expert opinion testimony. *State v. Brown*, 5 Ohio St.3d 133, 135 (1983).

served upon Horstman."

{¶ 37} The majority acknowledges it "can find nothing in the record to prove Horstman ever actually received Parisi's alleged discovery request, nor do we have the benefit of reviewing the full transcript of the contested hearing to determine the extent that the parties may have discussed those discovery requests." As Parisi failed to supply this court with most of the record and without an exhibit tendered at the time of the hearing, we must presume the validity of the trial court's determination.

{¶ 38} Because requests for admission narrow future issues to be litigated and can have significant impact upon the proceedings, assiduous compliance is required. *January Invests., L.L.C. v. Ingram*, 12th Dist. Warren No. CA2009-09-127, 2010-Ohio-1937 (admissions were deemed admitted due to the lack of compliance with strict time requirements). Accordingly, a trial court is not bound by unanswered admissions that do not indicate service on opposing counsel. The nature of the noncompliance warrants disregarding the unanswered admissions. Where there is no proof of service, a trial court is correct in not considering the filing. *Capital One Bank, N.A. v. Ryan*, 10th Dist. Franklin No. 14AP-102, 2014-Ohio-3932, ¶ 28.

**Journalized Contempt Ruling Does Not Substitute a Complete Record**

{¶ 39} In a separate matter, Parisi filed Motions for Contempt, seeking sanctions against Horstman for not responding to propounded discovery requests. The majority uses the trial court's journalized entry, which rules on Parisi's contempt motions as if that same verbiage was used by the trial court in its decision *at the hearing* not to permit reliance upon the requests for admission. However, we have no transcript of those discussions, nor do we have a journalized entry specific to Parisi not being permitted to rely upon the requests for admissions at the hearing.

{¶ 40} Despite a gaping lapse of relevant portions of the record, the majority continues

- 16 -

its analysis in an effort to label Parisi's failed discovery efforts as a "procedural technicality," "attempts to manipulate," and as "tactics" attempting to resolve the disputed issues through some form of implicit "deception and gamesmanship." Presumably, the majority attempts to reconstruct Parisi's "purpose" because the record before us does not contain any of the discussions or findings supplied by Parisi in her attempt to rely upon the unanswered admissions at the hearing. That portion of the record was not supplied by Parisi for our review. Only in denying Parisi's *Motions for Contempt*, did the trial court journalize that the admissions served no "useful purpose" other than to "harass and annoy" Horstman. Because large, relevant portions of the record are missing, it is impossible to review Parisi's "purpose" in submitting her requests for admission in an attempt to prove the probate attorney fees she believed she was owed. There is no need to speculate as to Parisi's intended purpose in attempting to rely upon her requests for admission because the record contains no proof of service pertaining to that document. Nor is it necessary to examine the trial court's ruling on Parisi's Motions for Contempt, as that ruling is not before this court on appeal.

{¶ 41} Without service and with nothing before us to indicate Horstman actually received the requests for admission, we need not re-interpret *Fifth Third* or resort to precedent in other states. "When portions of the transcript * * * are omitted from the record, the reviewing court has nothing to pass upon and thus, * * * the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St. 2d 197, 199 (1980). Yet, the majority chooses to assign, sua sponte, vitriolic intentions to Parisi in her failed attempt to prove her case by propounding admissions, a determination, which in fairness, should at least necessitate a complete record.

**Mere Scheduling of a Hearing Does Not Render Requests Inappropriate**

- 17 -

**{¶ 42}** In essence, the majority suggests if an issue is to be litigated at a scheduled hearing, it is an exploitation of the civil rules to focus admissions upon that issue. Nothing could be further from the intent of discovery rules. Pragmatically, there is no need for discovery on issues that are not going to be litigated. For example, and even though it appears a trial on all issues had been scheduled, unanswered requests can conclusively establish liability to a promissory note, even though going to the heart of the case. *Cleveland Trust Co. n.k.a. American Trust Co., Executor v. Willis*, 20 Ohio St.3d 66 (1985).

**{¶ 43}** The majority suggests there are "scenarios" where discovery requests should not be permitted to go to the heart of the case. In its rush to revisit *Fifth Third Bank v. Meadow Park Plaza, L.L.C.*, 12th Dist. Clinton No. CA2015-07-012, 2016-Ohio-753, the majority relies upon cases from California and other states. However, the cases cited involved narrow facts wherein the attempted use of discovery was litigated or the trial court made findings specifically involving the use of admissions, and a complete record existed for the purposes of appellate review, which was not provided to us by Parisi in this case.

**{¶ 44}** The majority holds that when a hearing has been scheduled it would be unfair and inappropriate to allow a party to submit requests for admission, even if timely and pursuant to the civil rules, that otherwise attempt to resolve issues set to be litigated. The majority states "where the exact issue raised within a request for admission had already been scheduled for a contested hearing on that issue [it] would be fundamentally unfair to the administration of justice and to do nothing more to lead further attempts to exploit the rules of civil procedure." I must disagree with this proposition as well as the majority's belief that our previous analysis in *Fifth Third* should be modified to reach the case at bar, particularly when based on out-of-state cases containing dissimilar facts where the court had the ability to review trial court findings via a complete record.

**The Facts and Circumstances of *Fifth Third* Are Very Different**

**{¶ 45}** There are drastic differences between our current scenario and the scenario in *Fifth Third*. In *Fifth Third*, the plaintiff moved for a partial summary judgment regarding the issues of Meadow Park's default on a loan and whether or not Matthew Daniels was liable on a personal guarantee that he had previously signed. The trial court granted partial summary judgment, finding that Daniels was obligated under the note as a personal guarantee, and therefore was responsible to pay any difference between the amount owed to Fifth Third and that amount raised through the receiver's sale of the real estate. Until the sale occurred and the costs and expenses calculated, it was unknown what amount of proceeds would be applicable to the original amount owed. The court scheduled a second hearing on that matter and both parties knew, because of the trial court's prior partial summary judgment, that once the proceeds from the receiver's sale were applied the only issue that remained for litigation would be the dollar amount owed on the personal guarantee.

**{¶ 46}** Contrary to the partial summary judgment, Daniels nevertheless requested a single admission from Fifth Third that once the proceeds of the receiver's sale were applied, nothing further would be owed by Daniels to Fifth Third.[6] The trial court determined that it had already rendered a decision that Fifth Third would receive a judgment on the difference between the proceeds and what was owed, and the fact that Daniels requested an admission *on the issue* the court had *already decided* was "disingenuous." This court agreed with the trial court's assessment that Daniels' attempt to "undo" the trial court's earlier decision was "full of gamesmanship."

**{¶ 47}** In the current case, the facts are completely different. The trial court had not

---

6. In written opposition to the request for admissions, it was argued that Daniels "slipped in" or buried the single request for admission among numerous interrogatories.

already rendered a judgment establishing the rights of either party.[7] Unlike *Fifth Third*, where the court already determined that the bank was entitled to some amount of money, the court in this case never reached any legal or factual determinations, prior to the hearing, pertaining to attorney fees for which Parisi might be entitled for handling estate matters. In extending the reach of *Fifth Third* to scenarios like the present one, it becomes enigmatic as to what other scenarios might be within the grasp of *Fifth Third*.

{¶ 48} *Fifth Third* involved special statutory proceedings of foreclosure and a land sale proceeding through receivership. The current case involves special statutory proceedings in probate court regarding the performance of work pursuant to an oral contract and attendant attorney fees. *Fifth Third* involved a court issuing a partial summary judgment with a litigant attempting to undermine the court's journalized judgment. The current situation contains no such judgment or conduct. *Fifth Third* involved discovery that had been served upon opposing counsel and the attempted use of such was opposed in writing; this case involves neither. *Fifth Third* involved the trial court making specific findings as to the attorney's "gamesmanship," with appellate review upon a complete record. Again, this case involves neither.

{¶ 49} The rationale in *Fifth Third* did not turn on whether or not a hearing had already been scheduled as the majority interprets it. The rationale in *Fifth Third* turned on the fact that *the trial court* found that the litigant displayed "gamesmanship" by attempting to "undo" the court's partial summary judgment which the trial court had already granted, thereby deliberately attempting to undermine the court. While the majority selectively revisits the

7. During a pretrial in the case before us, the judge, among other things, expressed without receipt of any evidence, that Parisi was not entitled to the attorney fees she was requesting. Based on this comment, Parisi asked the judge to recuse himself, which he subsequently did. The new judge assigned to the case made no decisions in advance of the hearing as to whether or not there was a valid oral contract, whether or not performance was agreed upon and delivered, whether or not the time expended was necessary and reasonable, or as to the amounts paid or claimed.

facts of *Fifth Third*, that case originally stood for the narrow proposition that discovery cannot be used by a party to "reverse" a trial court's judgment already delivered within the case. With the addition of an incomplete record in this case, *Fifth Third* is simply misplaced when applied to the facts sub judice. Therefore the harsh characterizations of Parisi's failed attempt to use the discovery rules to prove her case are also misplaced.

**Conclusion**

{¶ 50} In the world of litigation, hearings are scheduled in advance with the expectation that the parties will be conducting extensive discovery in an effort to eliminate as many issues as possible, even though those same issues are subject to a scheduled hearing. Using discovery in advance of a hearing, is not "gamesmanship" or "deception" or "manipulation," nor is it a "tactic" aimed at undermining the court, but rather it is routine, everyday-lawyering, using the civil rules as anticipated. An appellate court needs a complete record if it is to, for the first time upon review, draw inferences or make findings pertaining to counsel's conduct.

{¶ 51} A party cannot "deny" requests for admission for the reason that the requests relate to an issue scheduled to be litigated. *See Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193 (1998). Similarly, the mere fact that requests for admission go to issues scheduled to be litigated is not a reason for an appellate court to label the requests as an inappropriate tactic or an exploitation of the civil rules.

{¶ 52} In its misapplication of *Fifth Third*, the majority gives future litigants, and trial courts as well, no criteria as to what circumstances or "scenarios" justify labeling discover efforts as "procedural technicality" subject to being summarily disregarded with no advance filing or notice. The majority attempts to defend its extension of *Fifth Third* as if this current set of facts justifies such an extension. However, without the illumination of a complete record, such extension remains in dim light and therefore is a path we are better advised not

to travel, lest we stumble.

{¶ 53} The concerning precedent the majority's analysis sets is unnecessary to a concise resolution. Thus, I must respectfully concur in judgment only.