[Cite as *Southworth v. Eskins*, 2014-Ohio-4523.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| JAMIE LEE SOUTHWORTH, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2013-10-028 |
| | : | O P I N I O N |
| - vs - | | 10/13/2014 |
| | : | |
| CLINT EUGENE ESKINS, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 08 AD 0082

Ryan S. Reed, 214 Scioto Street, Urbana, Ohio 43078, for plaintiff-appellant

Jamie Williams, P.O. Box 53, 323 Main Street, Duncan Falls, Ohio 43734, for defendant-appellee

PIPER, J.

{¶ 1} Plaintiff-appellant, Jamie Southworth (Mother), appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, awarding custody of the couple's child to Clint Eskins (Father).

{¶ 2} Mother and Father, who were not married, had a child in 2007. Father's parentage was established by the juvenile court, and he was ordered to pay child support to

Mother. Father was also granted liberal visitation with the child, and has been very active in the child's life since the child's birth.

{¶ 3} In 2011, Mother moved the juvenile court for permission to relocate to Michigan with the couple's child so that she could marry a man she met online who resided there.[1] Father eventually agreed to Mother's move, and the parties agreed to parenting time. The juvenile court issued an agreed judgment entry setting forth the parenting time the parties had agreed upon, and Mother moved to Michigan with her two children in order to marry her fiancé. However, once Mother relocated to Michigan, she did not marry her fiancé. Instead, Mother began a serious relationship with Jordan Gonzalez, a Tier III sexual offender.

{¶ 4} Father learned of the relationship, and questioned Mother about it. Mother admitted that Gonzalez was a sex offender, but was somewhat evasive as to the details. Upon learning that Gonzalez was a Tier III sexual offender, and that the child was spending time alone with Gonzalez, Father filed a motion to change custody based upon a change in circumstances.

{¶ 5} The juvenile court held a hearing on Father's motion, and granted it. The juvenile court determined that there had been a change in circumstances when Mother moved to Michigan and began a relationship with a sexual offender. The juvenile court ordered that Father have custody of the child, and Mother have visitation. The juvenile court also ordered that the child was not to be in the presence of Gonzalez during Mother's visitation. Mother now appeals the juvenile court's decision, raising the following assignment of error:

{¶ 6} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT A CHANGE OF CIRCUMSTANCES OCCURRED IN THE CHILD OR RESIDENTIAL

---

1. Mother has another child by a different father, and that child also moved to Michigan with Mother.

PARENT'S LIFE, AND IN DETERMINING THAT IT WAS IN THE BEST INTEREST OF THE CHILD TO CHANGE CUSTODY AND TO REALLOCATE PARENTAL RIGHTS AND RESPONSIBILITIES TO THE APPELLEE.

{¶ 7} Mother argues in her assignment of error that the trial court erred in finding that a change of circumstances occurred, and in granting custody of the child to Father.

{¶ 8} Trial courts are entitled to broad discretion in custody proceedings. *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph one of the syllabus. As "custody issues are some of the most difficult and agonizing decisions a trial judge must make," the judge must be given "wide latitude in considering all the evidence" and the decision must not be reversed absent an abuse of discretion. *Id.* at 418. The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 9} We presume that the trial court's findings are correct because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic.) *Flickinger*, 77 Ohio St.3d at 419.

{¶ 10} A trial court asked to re-designate parental rights and responsibilities is required to first find that a change in circumstances occurred to warrant a change in legal custodianship. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589. R.C. 3109.04(E)(1)(a), provides, in pertinent part,

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds,

based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his residential parent, * * * and that the modification is necessary to serve the best interest of the child.

{¶ 11} Although R.C. 3109.04 does not provide a definition of the phrase "change in circumstances," Ohio courts have held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10, quoting *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604-05 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, R.C. 3109.04(E)(1)(a) also requires that the court make specific findings and also consider the best interests of the child.

> In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 12} Factors that must be considered when making a best interest determination are listed in R.C. 3109.04(F)(1)(a)-(j).

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and

responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 13} After reviewing the record, we find that the juvenile court properly determined that there was a change in circumstances once Mother became involved with a sex offender and began pursuing a marriage with him. Other courts have considered involvement with a sex offender to constitute a change in circumstances. *See In re Marriage of Faulhaber*, 11th Dist. Portage No. 2001-P-0110, 2002-Ohio-3380 (noting that appellant's choice to become involved with a sex offender was a valid factor to consider when determining a change of circumstances); and *Smith v. Smith*, 2d Dist. Clark No. 2005 CA 47, 2005-Ohio-6840 (finding

a change of circumstances where the appellant married a sex offender, even though the two did not live together during their marriage because appellant's home was near a school and her husband was not permitted to live near a school).

{¶ 14} The trial court heard evidence that since the time of the agreed entry allowing Mother to relocate, Mother moved to Michigan to pursue a marriage with a man she met on the internet. Once relocated, Mother did not marry the man, and instead, began a serious relationship with Gonzalez. Despite Mother knowing that Gonzalez is a registered Tier III sex offender who has lifetime reporting requirements, Mother did not inform Father that Gonzalez was a sex offender.

{¶ 15} Father, a police officer who often investigates sexual abuse cases involving children, learned of Gonzalez's status as a sex offender and confirmed the material facts surrounding Gonzalez's convictions for sex-related offenses with minors.[2] Father confronted Mother, and Mother assured Father that Gonzalez is not a threat to children. Mother told Father that Gonzalez's convictions were specific to his having consensual sexual relations with minors when those minors looked older than they actually were, and had misrepresented their ages to Gonzalez. Mother also informed Father that Gonzalez had custody of his biological child, and that she and Gonzalez would not be living together until they were married.

{¶ 16} At the hearing, Mother presented testimony from Gonzalez and his parents in an effort to demonstrate that Gonzalez does not pose a threat to children. Gonzalez's mother testified that Gonzalez poses no threat to children, and that he is a wonderful role model for his own son of whom he has sole custody. Gonzalez's mother testified that

---

2. According to Michigan law, Gonzalez's crimes were classified as "criminal sexual conduct of the third degree," and "criminal sexual conduct of the fourth degree."

Gonzalez attends church regularly and that he is raising his own son in a Godly manner. Gonzalez's mother also testified that in her belief, Mother and Gonzalez are moving toward marriage and have communicated to her their intention to be married.

{¶ 17} On cross-examination, Gonzalez's mother testified that Gonzalez was convicted of sex-related offenses with minors, and that he abides by his reporting requirements. She also testified that Gonzalez has custody of his son, and that the child's mother has a history of drug abuse. Gonzalez's mother also testified that a court did not order that Gonzalez have custody of his son, but rather, the son's mother agreed that Gonzalez would have custody of the child. Gonzalez's stepfather also testified, and stated that he also believed that Gonzalez and Mother were moving their relationship toward marriage, and that Gonzalez poses no threat to children.

{¶ 18} Gonzalez also testified, and stated that his relationship with Mother was "moving in" the direction of marriage. Gonzalez testified that Mother's child is safe and well-incorporated into his own family, and that Gonzalez considers Mother's child as his own child. Gonzalez also testified that he sought custody of his son, and that he and his son's mother were able to reach an agreement so that he has had custody of his son for six years. On cross-examination, Gonzalez testified that he watches Mother's child when she is working, and that he has been alone with the child on multiple occasions. Gonzalez testified that when he was 19 years old, he had sexual relations with two girls, ages 14 and 15, and that he served a year and a half in prison for his crimes. Gonzalez also testified that he has lifetime reporting requirements, and that he was classified as a Tier III sex offender.

{¶ 19} Father then presented his case, and called Christopher DeHaven, the father of Mother's other child, to testify. DeHaven testified that he learned of Gonzalez's sexual offender status from some source other than Mother, and that when he confronted Mother,

she claimed not to know the extent of Gonzalez's past. DeHaven also testified that he now has custody of the child he had with Mother, and that the child was afraid to return to Michigan because of something "in regards to Mr. Gonzalez."

{¶ 20} Despite Mother's contention that Gonzalez poses no threat to the child because Gonzalez has been reformed, we agree with the juvenile court that Mother's involvement in a serious relationship with a Tier III sex offender and allowing her child to be alone with Gonzalez constitutes a change of circumstances. This is especially true where Mother's intentions are clear and unequivocal that she plans on marrying Gonzalez and having the child living in the same home as Gonzalez. Mother already permits Gonzalez to spend time with the child alone, and she was less than forthcoming about the pertinent facts and circumstances to Father. Gonzalez's convictions specifically involved minors, and his lifetime reporting requirements remain in place. Such a situation has a material and adverse effect on the child, so that a change of circumstances occurred.

{¶ 21} As required by R.C. 3109.04(E)(1)(a), the juvenile court also made an express finding that the change in the child's environment "greatly outweighs the potential harm and danger to the child of being left" in the child's recent circumstances. We find no error in this conclusion. While it may be true that Gonzalez has made strides to overcome his past, the facts remain unchanged that he was convicted of sexual crimes against minors, and that the circumstances of his crimes were such that Michigan classified Gonzalez as a Tier III sexual offender and requires lifetime reporting requirements of him.

{¶ 22} Mother did not present any evidence that moving the child to Ohio would be harmful, other than stating that the child was doing well in Michigan and was close to Gonzalez's son. We agree with the juvenile court that any possible harm caused by the move back to Ohio would be outweighed by the advantage of protecting the child from the

dangers associated with exposing the child to a sexual offender. Any harm would also be outweighed by the advantage that Father and the child have a close and bonded relationship, and the child's extended family is located in Ohio.

{¶ 23} The juvenile court also considered the pertinent R.C. 3109.04(F)(1)(a)-(j) factors and determined that it was in the child's best interest that Father have custody.[3] Regarding the wishes of the child's parents regarding the child's care, the juvenile court considered that both parents wanted custody of the child. There is no indication in the record that the juvenile court interviewed the child in camera, so that the court did not consider the child's wishes. The juvenile court heard evidence that the child is bonded with Gonzalez's son, but also, that the child's extended family lives in Ohio.

{¶ 24} The court recognized that the main issue was certainly Mother's relationship with Gonzalez, and that as an "other person who may significantly affect the child's best interest," it was concerning that Mother "would pursue a relationship with a sex offender whose victims were minors when she has two minor children." The juvenile court also heard evidence that the child was well-adjusted to his community in Michigan, but also, that Mother had moved to Michigan to marry one man, and then moved again after she ended that engagement. The trial court considered the evidence and testimony presented during the hearing, and properly balanced the pertinent factors before making its decision. We, therefore, find no abuse of discretion in finding that a balancing of the factors demonstrated that the child's best interests are served in Father's custody.

---

3. Mother suggests in her brief that the juvenile court failed to make the necessary statutory findings in accordance with R.C. 3109.04. However, as previously discussed, the trial court did make an express finding regarding the harm of the move being outweighed by the benefit to the child. While the trial court did not list or discuss every best interest factor, the written decision makes reference to the statutory factors that were pertinent to the decision, and the overall decision demonstrates that the juvenile court considered and balanced all relevant factors before making its decision, as is required by statute.

{¶ 25} After reviewing the record, we find that the juvenile court properly found a change of circumstances had occurred since the time of the agreed entry, and properly balanced the statutory factors before finding that being placed in Father's custody is in the child's best interests. As such, Mother's sole assignment of error is overruled.

{¶ 26} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.