[Cite as *Winn v. Wilson*, 2018-Ohio-1010.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STACEY R. WINN, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-04-052 |
| | : | O P I N I O N |
| - vs - | | 3/19/2018 |
| | : | |
| EDWIN A. WILSON, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR07-11-1417


Repper-Pagan Law, Ltd., Christopher F. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for plaintiff-appellee

The Lampe Law Office, LLC, M. Lynn Lampe, Adam C. Gedling, 9277 Centre Pointe Drive, Suite 100, West Chester, Ohio 45069, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Edwin Wilson ("Father"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, awarding custody of his children to, plaintiff-appellee, Stacey Winn ("Mother"), and ordering retroactive child support.

{¶ 2} Father and Mother were married, had two children, and later divorced. The parties agreed to a shared parenting plan where Mother was named residential parent for

school purposes and Father had visitation with the children on weekends and weeknights. The plan was later modified by agreement of the parties to an equal division of time, with the children spending alternating weeks with Mother and Father.

{¶ 3} The parties also agreed that they and the children would participate in family counseling. However, Mother ended the counseling and filed a notice of relocation from Middletown, Ohio to Oxford, Ohio. The court granted father's request to keep the children in their school district, and named Father residential parent for school purposes. Mother and Father then moved to modify the shared parenting plan, and Father was designated residential parent for school purposes and Mother was given visitation. While this plan governed the parties' relationship, they experienced numerous disagreements and conflicts.

{¶ 4} In 2015, and four years after the most current plan went into effect, Mother and Father's father (paternal grandfather) alleged that Father committed domestic violence against his autistic brother, "Uncle Jimmy." The alleged domestic violence was purportedly witnessed by one child and overheard by the other. A temporary protection order was granted in favor of Uncle Jimmy against Father, but later dismissed. Mother then filed for a protection order on behalf of the children, claiming that Father emotionally abused them and that the children were fearful of Father. This protection order was also temporarily granted, but later dismissed.

{¶ 5} Father filed a motion to terminate shared parenting, a motion to restrict or terminate parenting time, a motion to designate custody, as well as a motion to modify child support. Mother then filed cross-motions for each of the motions filed by Father. A magistrate held a ten-day hearing on the various issues, and subsequently interviewed the children in camera.

{¶ 6} The magistrate terminated the shared parenting plan, and designated Father as residential parent and legal custodian. The magistrate also ordered restricted visitation and a

re-integration plan for Mother and the children. Mother filed objections to the magistrate's decision. The trial court sustained Mother's objections and designated Mother the residential parent and legal custodian of the children. The trial court also changed the children's school district to Oxford, limited Father's visitation, and ordered Father to pay retroactive child support. Father now appeals the trial court's decision, raising the following assignments of error. We will address the first two assignments of error together, as they are interrelated.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ABUSED ITS DISCRETION BY RELYING ON TESTIMONY AND EVIDENCE THAT DID NOT EXIST.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FAILED TO CONSIDER THE OVERWHELMING TESTIMONY IN FAVOR OF APPELLANT, INCLUDING EXPERT WITNESSES.

{¶ 11} Father argues in his first two assignments of error that the trial court's decision granting custody to Mother was not supported by the evidence offered at the hearings.

{¶ 12} Trial courts are entitled to broad discretion in custody proceedings. *Southworth v. Eskins*, 12th Dist. Fayette No. CA2013-10-028, 2014-Ohio-4523, ¶ 8. Given that custody issues are some of the most difficult decisions a trial judge must make, the trial court must be given wide latitude in considering all of the circumstances and evidence, and the decision must not be reversed absent an abuse of discretion. *Id.* The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 13} "Weight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. * *

* Weight is not a question of mathematics, but depends on its *effect in inducing belief*." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. (Emphasis sic.) In considering a challenge to the manifest weight of the evidence, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10.

{¶ 14} In weighing the evidence, a reviewing court must be mindful of the presumption in favor of the finder of fact. *Id.* In determining whether the trial court's decision is manifestly against the weight of the evidence, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶ 15} When reviewing a trial court's decision on a manifest weight of the evidence basis, an appellate court is guided by the presumption that the findings of the trial court were correct so that reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. *In re S.M.* at ¶ 10.

{¶ 16} If the trial court terminates a prior shared parenting plan according to R.C. 3109.04(E)(2)(c), the court "shall proceed" to allocate parental rights and responsibilities as if no shared parenting plan had ever been granted. R.C. 3109.04(E)(2)(d). The court is obligated to designate one parent the residential parent and legal custodian of the children "in a manner consistent with the best interest of the children." R.C. 3109.04(A)(1).

{¶ 17} To determine the best interest of a child, R.C. 3109.04(F)(1) requires the court to consider all relevant factors. *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 19. These factors include, but are not limited to (1) the wishes of the parents; (2) the child's wishes, as expressed to the court in chambers; (3) the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interests; (4) the child's adjustment to home, school, and community; (5) the mental and physical health of all persons involved in the situation; (6) the parent more likely to honor and facilitate visitation; (7) whether one parent has denied the other of parenting time; (8) whether child support orders have been followed; and (9) whether either parent has established or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(a)-(j).

{¶ 18} After a thorough review of the record, we find that the trial court's decision to name Mother as the residential parent and legal custodian of the children was not an abuse of discretion. The record reflects that the trial court considered the factors set forth in R.C. 3109.04(F)(1) when deciding what placement was in the children's best interests.

{¶ 19} The evidence established the following regarding the factors. First, the trial court indicated that both parties wanted custody of the children, and they could no longer cooperate and communicate in a shared parenting situation. As noted above, the relationship between the parties was filled with strife, and neither parent exercised compromise or cooperation with the other.

{¶ 20} Second, and in regard to the children's wishes, the trial court considered the magistrate's in camera interview of the children. The trial court found both children capable of expressing their wishes and concerns, and did not find the children's statements tainted by coaching of either parent. The trial court noted that the children love both parents and were somewhat conflicted during their discussion. The trial court did not expressly state a choice of the children or that the children made a decision as to which parent they wanted to have

- 5 -

custody, but did state in the written decision that the children's wishes expressed during the interview were important factors in its decision.

{¶ 21} The court also considered the children's interactions and interrelationships with parents, siblings, and other persons who may significantly affect their best interests. The court found that the children are closely bonded with extended family on both sides, including a half-brother from Mother's subsequent marriage and a stepsister in Father's home. The court also noted that the children have a "complicated" relationship with Father's new wife, and have also had recent difficulties with Father given the alleged incident with Uncle Jimmy.[1]

{¶ 22} The trial court gave this factor "great weight," and specifically noted that the only interaction the children have with Father's family is through Mother because Father is estranged from his parents, his brothers, and his sister-in-law. Moreover, the trial court found that Father's wife has "overstepped her boundaries as a stepparent" by advocating for Father, publicizing confidential psychological evaluations, sending "inflammatory" emails to extended-family, and registering the children for extracurricular activities on her own.[2]

{¶ 23} Regarding the children's adjustment to home, school, and community, the trial court considered that the children do well in school, both parents assist with homework, and that the children have friends in both communities in which they live. The children have been involved in extracurricular activities in both communities, though the children seem to enjoy

---

1. Father argues that the trial court abused its discretion by relying on non-existent testimony in making its decision and weighing information regarding the alleged altercation with Uncle Jimmy. The trial court made reference in its written decision to comparing the testimony of Mother's witnesses to testimony given previously at the restraining order hearing. However, neither child nor Uncle Jimmy appeared at the custody hearings as witnesses for Mother. Even so, there was ample evidence in the record, including the in camera interview with the children, to support the trial court's finding that the children were credible and that Mother's version of the altercation between Father and Uncle Jimmy was more believable than Father's version. As such, there was no abuse of discretion.

2. The record indicates that Father's wife listed herself and Father on the registration forms as the children's parents, named a third-party as emergency contact, while Mother did not know that the children were involved in the activity.

the activities cultivated by Mother, such as music-based lessons.

{¶ 24} The trial court also considered the mental and physical health of all persons involved in the situation, and found that Mother suffered a stroke in 2013 and has some lingering side effects, including light sensitivity and difficulty processing auditory information. The children have also been diagnosed with medical and psychological issues. The parties often disagree on a course of treatment for their children's psychological issues, including varying evaluations from several sources.

{¶ 25} The record indicates that the children have been subject to several psychological examinations, and have been evaluated by several clinicians. Some of the evaluations concluded that custody should remain with Father so that the children's lives would not be disrupted by a change in schooling, which could cause them more stress. Father argues that the expert testimony he presented at trial, including three experts who concluded that Father should have custody, establishes that granting custody to him was in the child's best interests.

{¶ 26} However, as this court has noted, "the trier of fact is not required to accept as gospel every aspect of the expert's testimony; the trier of fact may believe all of what a witness says, none of it, or part of it." *Tolliver v. Tolliver*, 12th Dist. Clinton No. CA90-07-015, 1991 Ohio App. LEXIS 182, *5 (Jan. 22, 1991). It is well-established that an expert's opinion is not conclusive upon a trier of fact and serves only as "an item of evidence intended to assist the trier of fact in consideration with the other evidence of the case." *In re Estate of Leichman*, 12th Dist. Warren Nos. CA2015-07-060 and CA2015-07-062, 2016-Ohio-4592, ¶ 12.

{¶ 27} When reviewing the expert testimony and reports, the trial court specifically noted that some of the evaluations and suggestions may have been tainted by outside information and self-serving representations by the parties. The record indicates that the trial

court considered the expert testimony, but did not find such dispositive of the issue. In so doing, the trial court considered all of the evidence presented, and did not abuse its discretion by not agreeing with the expert testimony.

{¶ 28} The trial court considered which parent was more likely to honor and facilitate visitation and found that both parties obey "clearly delineated parenting orders," but any aspect of the plan left open to interpretation resulted in conflict. The parties engaged in "petty behavior" regarding transportation, participation in activities, medication for the children, and exchange of equipment and clothing. Sadly, both parties engaged in "manipulative behavior toward the children" and "demonize" the other parent instead of working together cooperatively to raise the children. Despite agreeing to shared parenting plans in the past, the parties have been unsuccessful at addressing their "underlying dysfunction that permeates their parenting of these children."

{¶ 29} Based on these factors, the trial court focused specifically on the best interest of the children and crafted parenting orders designed to offer healing and a chance to grow successful relationships among all involved. The trial court noted its focus on the children's relationship with extended family and "their expression of their concerns in the in camera interview" before awarding Mother custody. The trial court noted, and we agree, that "this is not a 'victory' for" Mother in that she now has a profound responsibility to ensure that Father is a part of the children's lives.

{¶ 30} Based on a balancing of the factors and after a review of the record, we find the trial court did not abuse its discretion in awarding custody to Mother and that such decision was not against the manifest weight of the evidence. As such, Father's first two assignments are overruled.

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE TRIAL COURT ABUSED ITS DISCRETION BY HEAVILY RELYING ON

THE IN CAMERA INTERVIEW OF THE CHILDREN, WHEN THE TRIAL COURT DID NOT HAVE A TRANSCRIPT OF THE IN CAMERA INTERVIEW TO REVIEW.

{¶ 33} Father argues in his third assignment of error that the trial court erred in relying on the in camera interview absent a transcript of that interview.

{¶ 34} The record indicates that the trial court did not have a written transcript of the in camera interview. However, the record also indicates that a *recording* of the interview was available to the trial court during its review of the matter. Recordation of an in camera interview can be made via audio recording, video recording, or stenographic record. *Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716 (12th Dist.).

{¶ 35} The trial court had access to the recording of the in camera interview with the children, and made reference several times within its written decision to having reviewed that recording. There is no need for the interview to be based *only* upon a transcript where the trial court has access to a recording of the in camera interview. It is the content of any statements or conversations generated, not the form of reviewing that content that is significant. Thus, the trial court did not abuse its discretion, and Father's third assignment of error is overruled.

{¶ 36} Assignment of Error No. 4:

{¶ 37} THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING THE EFFECTIVE DATE OF CHILD SUPPORT MORE THAN ONE YEAR PRIOR TO THE CHANGE OF CUSTODY DETERMINATION.

{¶ 38} Father argues in his final assignment of error that the trial court erred in ordering retroactive child support.

{¶ 39} R.C. 3119.84 provides that a court "may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition

for modification is entered." Generally, because of the time it takes to modify child support orders, a modification order may be made retroactive to the date the motion was filed "unless special circumstances dictate otherwise." *Kauza v. Kauza*, 12th Dist. Clermont No. CA2008-02-014, 2008-Ohio-5668, ¶ 21. The determination of whether to make a child support modification order retroactive is within the discretion of the trial court and will not be reversed on appeal absent a showing an abuse of discretion. *Id.* at ¶ 20.

{¶ 40} There was no reason given by the trial court for its decision to make the change in child support retroactive to the date Mother filed of her motion. Normally, it is expected that a trial court make the date of a motion's filing as the retroactive start date of the new orders because the law assumes that the set of circumstances in place at the time of the filing (such as a child's emancipation or a party's new higher paying job) continues throughout the pendency of the proceeding. Here, however, that assumption is not accurate and we find that special circumstances dictate using a different date.

{¶ 41} The trial court took over a year to decide Mother's motions for custody and child support. However, during that time, Father had custody, paid for the children's expenses, and Mother had only visitation with the children. There was no reason to make support retroactive to the filing date of Mother's motions where circumstances had not changed at an earlier date, such as Mother becoming responsible for extra support. Thus, making the obligation retroactive to the date of Mother's filing required Father to pay support for time that he was already providing support as the residential parent. Thus, because no rationale was given for the date used by the trial court, the circumstances render it an abuse of discretion in making the award retroactive, and Father's fourth assignment of error is sustained.

{¶ 42} The matter is reversed in so much as the trial court abused its discretion in ordering retroactive child support, and remanded so that the trial court can order child

support starting on the actual date of the change of custody to Mother rather than the date Mother filed the motion.

{¶ 43} Judgment affirmed in part, reversed in part, and the matter is remanded for the sole purpose of changing the start-date of Father's child support obligation.

HENDRICKSON, P.J., and M. POWELL, J., concur.