[Cite as *Marois v. Marois*, 2021-Ohio-2811.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


|  |  |  |
|---|---|---|
| KERI L. MAROIS, | : | |
| Appellee, | : | CASE NO. CA2020-12-071 |
| | : | O P I N I O N |
| - vs - | | 8/16/2021 |
| | : | |
| ROBERT G. MAROIS, | : | |
| Appellant. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2019 DRA 00367


Richard B. Uhle, Jr., for appellee.

Keegan & Co. Attorneys, LLC, and Christopher T. Travis, for appellant.


**S. POWELL, J.**

{¶ 1} Appellant, Robert Marois ("Father"), appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, dividing marital property and designating appellee, Keri Marois ("Mother") the residential parent and legal custodian of their two children. For the reasons outlined below, we affirm the trial court's decision.

{¶ 2} Mother and Father married in November 2012, and had two children: J.M. born on June 22, 2009, and G.M., born on September 19, 2012. Mother filed a complaint for divorce on March 20, 2019.

{¶ 3} In April 2019, the trial court granted Mother exclusive occupancy of the marital residence and designated Mother the temporary residential parent and legal custodian of the children. The trial court also established parenting time for Father, which entitled him to parenting time with the children on Thursday evenings and every other weekend. Father did not object to the temporary order or move the trial court for additional parenting time.

{¶ 4} In January 2020, Father moved the trial court for a temporary order that all marital property remain in the marital residence, which was due to be sold to Father's father the following month. The trial court held a telephone hearing on the matter, and issued an entry indicating Father's counsel would hold the net proceeds from the sale in his IOLTA account until further court order or written agreement of the parties, Father would resume occupancy of the former marital residence in conjunction with the sale to his father, Mother would remove personal property from the residence to furnish her new residence, and all the personal property would be subject to reallocation between the parties at the final hearing.

{¶ 5} On August 28, 2020, the trial court held a final hearing on Mother's divorce petition. Mother testified that she lives in New Richmond, Ohio and that Father lives a few blocks away. Mother indicated J.M. and G.M. live with her part-time and with Father part-time, as Father has parenting time every other weekend and overnights every other Thursday. According to Mother, Father followed that visitation order consistently, aside from a five-month period between June 2019 and October 2019, when he stopped visiting or consistently contacting the children.

{¶ 6} Mother testified that on one occasion, J.M. was not feeling well when Mother

met Father at the drop-off location on a Thursday evening. Because J.M. did not feel well, Mother told J.M. she did not have to go with Father and could stay home with Mother instead. The police were called to the scene and an officer spoke with J.M. Afterward, the officer left without charging Mother, G.M. left with Father for his scheduled parenting time, and J.M. returned home with Mother.

{¶ 7} On another occasion, in December 2019, Mother denied Father his parenting time on a Thursday evening because Father refused to take G.M. to his school affiliated Christmas play. Because Father would not attend the play, Mother took G.M., as well as J.M., to the play instead of facilitating Father's parenting time.

{¶ 8} Mother described another occasion in March 2020, shortly before the stay-home order was issued in Ohio, when she took the children to Findlay for ten days to visit her boyfriend. During that time, Father missed his parenting time with the children. When Mother and the children returned to New Richmond, Mother offered to make up Father's parenting time, but Father declined. According to Mother, she was not concerned with Father missing parenting time while she and the children were out of town because he previously went five months without visiting the children and because she offered to make the time up upon returning home. Mother indicated she had followed the parenting time schedule since the incident and would continue to do so in the future. Upon further questioning, Mother confirmed she did not wish to keep the children away from Father.

{¶ 9} Mother indicated she and Father had a disagreement regarding the distribution of their personal property and furniture after separating. Father created a list of the household items owned by the couple, which the parties notated to reflect which party would receive the property upon separating. A copy of the list was admitted into evidence as Plaintiff's Exhibit 15. Mother believed that, aside from a few items, the property was divided equally, and Father received his fair share of the furniture and household goods.

Mother indicated she and Father had "more or less" agreed to the division of personal property, which was reflected in the proposed distribution list of household items. Although Father did not get "everything he wanted," they both received a "significant number of items" on the list, and Mother was satisfied with the distribution. Mother later admitted that some of the items that were identified as in Father's possession remained in Mother's possession, including a full-sized bedframe and the children's toy chest, and that other items identified as in Mother's possession remained in Father's possession, including a window air conditioner and other household appliances.

{¶ 10} Mother discussed her concerns with Father's parenting, including his ability and willingness to help with the children's remote schooling on Fridays and the lack of supervision at his home. Of particular concern to Mother was Father's decision to leave the children alone with his girlfriend's children on multiple occasions.

{¶ 11} Regarding the sale of the marital home, Mother testified Father's father purchased the home in February 2020, resulting in approximately $6,000 in proceeds. At the time of the hearing, neither party claimed to have received the proceeds from the sale.

{¶ 12} Mother then discussed several "harassing" text messages she had received from Father after she filed for divorce, as well as a number of harassing calls and emails she received from Father around the same period. Printed copies of the messages, as well as Mother's cell phone call logs, were admitted into evidence.

{¶ 13} Father testified he was the primary caregiver for the children until 2016 and that he believed he and Mother should share equal time with the children. Father lives a few blocks from Mother with his girlfriend and her two children, who were 15 years old and four years old at the time of the hearing.

{¶ 14} Father had not voluntarily missed his parenting time since March 2020, but testified Mother denied him parenting time in March 2020 when she was out of town with

the children in Findlay. Father agreed Mother offered him makeup parenting time when she returned, and that he made up the parenting time he missed. On cross-examination, Father disputed that he did not see the children for a five-month period but conceded he had no overnight visitation with them during that time. Father also indicated that, despite the guardian ad litem's initial recommendation that Father have the children one-half of the time, he did not ask the court for more parenting time with the children. According to Father he never requested such visitation because, as far as he knew, Mother would not agree to such a schedule.

{¶ 15} Father testified he believed he and Mother could cooperate enough to have shared parenting; however, Father also detailed several issues he has had with Mother throughout the divorce proceedings, including Mother taking his money and his possessions, kicking him out of his house, requesting supervised visitation, and withholding his property. Father also admitted Mother's contact-name in his cell phone was "Cry Baby Bitch," as Mother "cries" when "she doesn't get her way."

{¶ 16} Relating to the property distribution, Father indicated Mother took all of the children's belongings and did not leave the items designated as his on Plaintiff's Exhibit 15. Father specifically noted Mother's refusal to return the family dog, despite Father's purchase of the dog for $250 without Mother's knowledge. Father was further upset that, upon the parties' separation, Mother registered the dog as a service dog and had the dog spayed.

{¶ 17} Father also discussed the proceeds from the sale of the marital home and indicated that although he had not received the check for $6,000, he received an escrow check for $1,100, which he did not split with Mother.

{¶ 18} Mother's mother testified that she had lived with the parties for some time,

and it was her opinion that Mother and Father were incompatible to be married.[1]

{¶ 19} Father's girlfriend testified that she and her children have lived with Father since February 2020. During that time, Father's girlfriend observed Father's parenting, and testified his parenting was "fine to [her]" and the children enjoyed their time with Father. Father's girlfriend had never seen Father act violent with the children or discipline them. Father's girlfriend indicated her oldest son supervises the children on occasion, which she considered appropriate, but denied leaving the younger children in J.M.'s care when she and Father were not home.

{¶ 20} The trial court later held an in-camera interview with the children on September 9, 2020. After consideration of the testimony, exhibits, in-camera interview, and the guardian ad litem's reports, the trial court granted Mother a divorce from Father, granted custody of the children to Mother, and awarded Father alternating weekends and holiday parenting time, provided he completed parenting classes. The trial court entered a decree of divorce shortly thereafter.

{¶ 21} Father now appeals, raising three assignments of error for our review.

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ARRIVING AT FINAL JUDGEMENT [sic] DESIGNATING THE PLAINTIFF/APPELLEE AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN AS SAID JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 24} In his first assignment of error, Father argues the trial court's decision finding it was in the children's best interest to designate Mother the residential parent and legal

---

1. Mother's counsel elicited additional testimony from Mother's mother regarding Father's behavior towards her, which she described as very angry and threatening, but ceased the line of questioning upon the guardian ad litem's comments that such evidence was "not helping [the children] in any way."

custodian was an abuse of discretion in that it was against the manifest weight of the evidence. We disagree.

{¶ 25} Trial courts are entitled to broad discretion in custody proceedings. *Southworth v. Eskins*, 12th Dist. Fayette No. CA2013-10-028, 2014-Ohio-4523, ¶ 8. Given that custody issues are some of the most difficult decisions a trial judge must make, the trial court must be given wide latitude in considering all of the circumstances and evidence, and the decision must not be reversed absent an abuse of discretion. *Id.* The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a lower court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶ 26} As noted above, Father argues the trial court's decision designating Mother the children's residential parent and legal custodian was against the manifest weight of the evidence. A manifest weight of the evidence challenge concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In reviewing the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Brown v. Brown*, 12th Dist. Clermont No. CA2018-08-064, 2019-Ohio-2164, ¶ 30, citing *Eastley* at

¶ 20.

{¶ 27} "[A]n appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility." *In re D.R.*, 12th Dist. Butler Nos. CA2005-06-150 and CA2005-06-151, 2006-Ohio-340, ¶ 12. "[R]eversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment." *Jones v. Wall*, 12th Dist. Warren No. CA2015-10-088, 2016-Ohio-2780, ¶ 14, citing *In re G.S.*, 10th Dist. Franklin No. 05AP-1321, 2006-Ohio-2530, ¶ 4.

{¶ 28} In a divorce proceeding, the trial court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage in a manner consistent with the best interest of the children. R.C. 3109.04(A). To determine the best interest of a child, R.C. 3109.04(F)(1) requires the court to consider all relevant factors. *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 19. These factors include, but are not limited to: (1) the wishes of the parents; (2) the child's wishes, as expressed to the court in chambers; (3) the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interests; (4) the child's adjustment to home, school, and community; (5) the mental and physical health of all persons involved in the situation; (6) the parent more likely to honor and facilitate visitation; (7) whether one parent has denied the other of parenting time; (8) whether child support orders have been followed; and (9) whether either parent has established or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(a)-(j). "[N]o single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances." *Suess v. Suess*, 12th Dist. Warren Nos. CA96-01-006 and CA96-01-008, 1996 Ohio App. LEXIS 4400, *6 (Oct. 7, 1996).

{¶ 29} After a thorough review of the record, we find that the trial court's decision to

name Mother as the residential parent and legal custodian of the children was not unreasonable, arbitrary, or unconscionable, nor was it against the manifest weight of the evidence.

{¶ 30} Father takes specific issue with the trial court's analysis of the factors within R.C. 3109.04(F)(1)(c), (f), and (i). With regard to R.C. 3109.04(F)(1)(c), the trial court noted that the children's interaction with Father's girlfriend's children concerned the court, as Father resides with those children. Father claims this is unsupported by the record and there is no evidence of "any particular negative interaction between the minor residence [sic] of the home," aside from Mother's attempt to enter hearsay evidence that the girlfriend's older child was providing care at times for the minor children. However, after a review, we find there is ample evidence in the record, including in the guardian ad litem reports and the in-camera interview with the children, to support the trial court's conclusion that the children's interactions with the girlfriend's children were concerning. Although Father and his girlfriend testified there was nothing inappropriate regarding the relationship between their children, the trial court was permitted to disbelieve their testimonies, and instead conclude that the other characterizations of the children's relationship and contact were more truthful. Because the trial court "ha[d] the best opportunity to view the demeanor, attitude, and credibility of each witness * * * this court will not second-guess its judgment." *Porter v. Porter*, 12th Dist. Butler No. CA2019-11-185, 2020-Ohio-4504, ¶ 47, citing *Gillespie v. Gillespie*, 12th Dist. Clermont No. CA2011-05-034, 2012-Ohio-51, ¶ 13.

{¶ 31} Regarding its consideration of R.C. 3109.04(F)(1)(f) and (i), the trial court found that due to the hostility displayed by Father, Mother was the more likely parent to honor and facilitate court-approved parenting time rights. The court further noted that apart from a few minor interruptions, the denial of the other's parenting rights was not an issue. Father argues these findings are against the manifest weight of the evidence, and amount

to an abuse of discretion, because "[t]he record is replete with instances where [M]other denied parenting sua sponte with conscience [sic] disregard for the order." Father supports this claim by selectively highlighting the testimony and evidence he believes tips the scale in his favor, and demonstrates Mother is unlikely to adhere to the court's orders or facilitate parenting time. While we agree the record reflects Mother has, on occasion, disregarded the trial court's parenting time order, the record also reflects Father has similarly failed to follow the trial court's orders on occasion, including failing to timely complete a parenting course. Despite Mother's occasional noncompliance, which was discussed at length at the hearing, the record reflects Mother desires to facilitate a relationship between the children and Father, and has done so on most occasions.

{¶ 32} Furthermore, it is clear the trial court gave significant weight to the open hostility Father displayed towards Mother during the proceedings, including his outbursts during the hearing and the text messages admitted into evidence, the obscene nickname he used for Mother in front of the children and on his cell phone, and other conduct described in the guardian ad litem's reports. After our review, we conclude it was not unreasonable, arbitrary, or unconscionable for the trial court to believe this hostility could prevent Father from facilitating Mother's parenting time with the children in the future.

{¶ 33} Additionally, the trial court placed substantial weight on the parties' inability to cooperate and make decisions jointly for the children. In so doing, the trial court highlighted Father's lack of respect and nastiness towards Mother, and his inability to separate what he wants from the best interests of the children. These concerns are mirrored in the guardian ad litem's report, as well as her comments at the hearing, and are supported by the testimony presented at the hearing. In light of the evidence in the record, we do not find the trial court's findings unreasonable or arbitrary.

{¶ 34} While it is clear that Father disagrees with the trial court's decision, Father's

argument serves as nothing more than a challenge to how much weight the trial court should have given to each of the best interest factors outlined above. But, "[i]t is the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest." *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18. That is to say it is the trial court, not this court, who is "entitled to consider this evidence and determine the relative weight to assign to it in examining the best interest factors." *Harmon v. Radcliff*, 12th Dist. Butler No. CA2017-04-047, 2017-Ohio-8682, ¶ 48.

{¶ 35} "This court should not, and will not, second-guess the domestic relations court's decision in regard to the appropriate weight to be given to any one of those factors." *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 33, citing *Albert v. Albert*, 2d Dist. Montgomery No. 24000, 2010-Ohio-6112, ¶ 32 ("[w]e defer to the trial court's determinations of the parties' credibility and of the appropriate weight to be given to the statutory factors"). This is because, as noted above, the discretion that a lower court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 2009-Ohio-4824 at ¶ 17, quoting *Miller*, 37 Ohio St.3d at 74.

{¶ 36} Based on a balancing of the factors and after a review of the entire record, we find the trial court did not abuse its discretion in designating Mother the residential parent and legal custodian of the two children and that such decision was not against the manifest weight of the evidence. As such, Father's first assignment of error is overruled.

{¶ 37} Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ARRIVING AT ITS JUDGMENT AS TO THE DIVISION OF PROPERTY AS THE COURT'S JUDGMENT THAT THE MARITAL PROPERTY HAD BEEN EQUITABLY DIVIDED WAS AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 39} Assignment of Error No. 3:

{¶ 40} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ARRIVING AT ITS JUDGMENT AS TO THE DIVISION OF MARITAL DEBT AS THE COURT'S JUDGMENT THAT THE MARITAL DEBT IS EQUITABLY DIVIDED WITH EACH PARTY KEEPING THE DEBT IN THEIR NAME AS THE COURT PREJUDICED DEFENDANT/APPELLANT TO ENTER DOCUMENTARY EVIDENCE OF DEBT NOT DISCLOSED IN DEFENDANT'S DEMAND FOR PRODUCTION OF DOCUMENTS.

{¶ 41} Because his remaining assignments of error are interrelated, we will discuss Father's second and third assignment of error together. In these assignments of error, Father argues the trial court erred in finding that the marital property and debt was equitably divided, and that the trial court's decision was against the manifest weight of the evidence.

{¶ 42} The Revised Code provides that "the division of marital property shall be equal." R.C. 3105.171(C)(1). "Marital property" includes marital debt. *Hurst v. Hurst*, 12th Dist. Butler No. CA2019-07-119, 2020-Ohio-4006, ¶ 50, citing *Smith v. Smith*, 12th Dist. Clermont No. CA2017-11-059, 2018-Ohio-3548, ¶ 9. However, if the domestic relations court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. *Id.*; *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015 and CA2012-07-016, 2013-Ohio-1733, ¶ 34. The domestic relations court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54.

{¶ 43} As noted above, a manifest weight of the evidence challenge concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley*, 2012-Ohio-2179 at ¶ 12.

{¶ 44} Here, the trial court determined that the personal property, debts, and household goods would be kept or paid by the party who possessed them at that time. Father claims the resulting property distribution was inequitable because Father did not receive the items identified in Plaintiff's Exhibit 15 and was left with "whatever garbage" Mother elected to leave behind. Because he did not receive all the items to which he was entitled, Father claims the trial court's division was unreasonable and unconscionable, and against the manifest weight of the evidence.

{¶ 45} As noted above, the record reflects the parties created a list of their personal property and the parties had "more or less agreed" to the distribution of that property. The list was admitted into evidence as Plaintiff's Exhibit 15 and notated the proposed distribution of the property. Notably, many of the items on the list were not assigned a corresponding value.

{¶ 46} After a review, we find there is credible evidence in the record that Father received most of the personal property and household goods the parties agreed upon in Plaintiff's Exhibit 15. Mother testified she left Father the items identified on the list, aside from a few items like a full-sized bedframe and toy chest. Father, on the other hand, testified repeatedly that Mother "took his stuff" and that he was left with nothing but garbage. Despite Father's allegations, Father does not identify on appeal which items from the list Mother unfairly received, nor does he explain why the list or trial court's distribution was inequitable. While the record reflects Father did not receive some items identified on the list as in his possession, it also indicates he received some of the property the list attributed to Mother. We note that the items left in Father's possession were likely the more valuable items owned by the parties, including the household appliances and window air conditioning unit. Thus, the items Father did not receive, such as the full-sized bed, were likely of lesser value than the items he expected to go to Mother but remained in his possession.

Additionally, while Father complains that Mother received the children's furniture and toys, Plaintiff's Exhibit 15 notes she intended to retain those items upon vacating the marital home, as the children primarily lived with her at that time. Based upon these circumstances, and despite Father's conclusive characterization of the distribution as unequitable, we decline to find the trial court abused its discretion in distributing the personal property at issue here.

{¶ 47} We further find the trial court did not abuse its discretion in ordering each party to keep and pay the credit card debt in his or her name. Father testified he has a total of $8,500 in credit card debt which he accrued during the marriage. Father's testimony was supported by documentation from three credit card companies identifying the total amount owed on his credit cards. Mother testified she has a total of $3,600 in credit card debt which she accrued during the marriage and for expenses shared between herself and Father when they were living together. Documentation supporting Mother's credit card debt was not admitted into evidence. Notably, neither side presented any evidence regarding the individual charges of their credit cards.

{¶ 48} After Father rested his case, Mother reiterated to the trial court that she had "proposed since day one, he pays his debts, she pays hers and they split the settlement escrow check equally." Father did not argue for a different division in the trial court, nor does he propose an alternate division on appeal. Instead, Father claims the trial court erred in allowing Mother to testify as to her credit card debt. We disagree.

{¶ 49} At the hearing, Mother attempted to rely upon and admit into evidence documentation of her credit card debt in March 2019. After an objection by Father, the trial court excluded the documentation because Mother had failed to timely disclose the document to Father during discovery. Notwithstanding the trial court's decision not to admit Mother's credit card statement into evidence, the trial court permitted Mother to testify

- 14 -

regarding her personal knowledge of her credit card debt in March 2019. After a review, we find no error in the trial court's decision to allow, and believe, Mother's testimony regarding her credit card totals and usage at the time of the parties' separation. See, e.g., *Sangeri v. Yerra,* 10th Dist. Franklin No. 19AP-675, 2020-Ohio-5520, ¶ 50 (indicating marital credit card debt may be established through credible testimony). Although Father claims he was unable to "scrutinize" Mother's credit card documentation, the record reflects the trial court based its division upon Mother's testimony, not the document she sought to introduce into evidence, and Father had the opportunity to cross-examine Mother regarding her testimony.

{¶ 50} Furthermore, Mother disclosed on her affidavit of income and expenses that she had $3,500 in credit card debt as of March 2019. Although Father requested copies of all documents Mother intended to introduce at trial, Father did not seek additional discovery or documentation specifically related to Mother's debt disclosure, despite his ability to do so.

{¶ 51} Accordingly, based upon the totality of the circumstances, we are not convinced the trial court's property division, including the parties' credit card debt, was so unreasonable, arbitrary, or unconscionable as to constitute an abuse of discretion. Additionally, because there is credible evidence via Mother's testimony and Plaintiff's Exhibit 15 upon which the trial court based its division of the parties' property, we find that the trial court's decision was not against the manifest weight of the evidence.

{¶ 52} In light of the above, we find no merit to Father's second and third assignments of error and they are therefore overruled.

{¶ 53} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.